UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLTON REIVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 18 C 3997 |
| ) | |
| ILLINOIS STATE POLICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Illinois State Police's ("ISP") motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant the motion.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Carlton Reives ("Reives") is an African-American male and a retired ISP Special Agent. Reives worked for ISP from September 1989 until April 2018. Reives says that ISP discriminated against him based on his race by giving him a 60-day suspension, downgrading his job ratings, and placing him on "proof status" for sick leave. The Court will address each factual component in turn.

### a. 60-Day Suspension

Reives' 60-day suspension stems from his 2016 Super Bowl Detail assignment. The Super Bowl detail was a voluntary overtime video gaming operation from 12:00 pm to 5:00 pm on January 24, 2016.[1] Reives and his partner were to conduct inspections of businesses with video gaming machines to ensure the locations followed Illinois law and to monitor for illegal gambling. Reives and his partner were assigned ten locations total, but they decided to each inspect five locations individually.

On February 3, 2016, Reives' partner submitted a report in the Illinois Gaming Board ("IGB") Video Incident Reporting System ("VIR") to Sergeant Thomas Griffin ("Sergeant Griffin"), his commanding officer, for review and approval. Sergeant Griffin approved the VIR and sent it to his superior, Lieutenant William Doster ("Lieutenant Doster"), for review and approval. Lieutenant Doster questioned whether Sergeant Griffin gave Reives' partner permission to begin work early or work alone. Lieutenant Doster asked Sergeant Griffin to have Reives and his partner prepare individual memoranda describing their activities. Sergeant Griffin instructed Reives his partner to document the time that they arrived, who they spoke to, what they were looking for, and what they did at each location. Sergeant Griffin instructed them to be as honest and accurate as possible.

---

[1] The name of Reives' partner was filed under seal to protect their identity. The parties do not dispute that Reives' partner is outside Reives' protected class.

Reives' memorandum indicated that he arrived at his first location at 12:00 p.m., the second location at 1:00 p.m., the third location at 2:00 p.m., the fourth location at 3:00 p.m., and the fifth and final location at 4:00 p.m. ISP says these times are inaccurate. Security footage showed Reives at his last location at 2:12 p.m. and passing through a tollbooth at 2:38 p.m. Reives says that the times in his memorandum are "approximate." By contrast, Reives' partner's memorandum stated that he arrived at his locations at 11:45 a.m., 1:00 p.m., 1:20 p.m., 1:40 p.m., and 2:30 p.m. Additionally, Reives' partner disclosed that he attended a wake at 3:45 p.m. while still on duty.

As a result of the memoranda, Lieutenant Doster submitted a Complaint Against Department Member Form ("CADMF") against Reives and his partner. The Division of Internal Investigation ("DII") investigated the CADMF by interviewing Sergeant Griffin, Lieutenant Doster, and employees of the establishments visited by Reives and his partner. The DII also viewed the security camera footage.

Following the investigation, the DII issued administrative charges against Reives and his partner. Reives was charged with two violations of Rules of Conduct ("ROC")-002, Paragraph III.A.33 ("Paragraph 33") and one violation of ROC-002, Paragraph III.A.40 ("Paragraph 40"). Paragraph 33 states:

> Reports submitted by officers will be truthful and complete, and no officer will knowingly make false statements, charges, or allegations in connection with any Department citations, warnings, assistance rendered, accident reports, field reports, investigative reports, computer entries, or by any other means that creates an official record of the Department.

3

A violation of Paragraph 33 is Level 5 Misconduct. The recommended penalty for the first offense is a suspension of sixty to ninety days.

Paragraph 40 states: "Under the order of the Director, Colonel, or a superior officer, officers will truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the Department that may be asked of them." A violation of Paragraph 40 is Level 4 Misconduct. The recommended penalty for a first offense is a suspension of thirty-one to forty-five days.

Reives' partner was charged with one violation of ROC-002, Paragraph III.A.12 ("Paragraph 12"). Paragraph 12 states: "Officers will perform their duties in a manner that will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department." A violation of Paragraph 12 is Level 1 Misconduct. The recommended penalty for a first offense is a reprimand to a three-day suspension.

The ISP Director has the authority to discipline ISP officers. However, a suspension of thirty days or more must be made by the ISP Merit Board. Based on the Administrative Charges, ISP Director Leo Schmitz ("Schmitz") issued a three-count complaint to the Merit Board against Reives for: (1) Submitting False Reports – Inspection Reports; (2) Submitting False Reports – Departmental Memorandum; and (3) Failure to Truthfully Answer Questions of a Superior Officer. A Merit Board hearing officer heard testimony from witnesses, including Reives and his partner, and issued recommended findings of fact and conclusions of law stating that ISP proved by a preponderance of evidence that Reives violated Paragraphs 33 and 40. On October

24, 2017, the Merit Board issued a decision finding Reives guilty on all four counts and issued a sixty-day suspension. Reives' partner's disciplinary action was not referred to the ISP Merit Board and he was issued a three-day suspension.

### b. Performance Evaluation

Performance evaluations and written tests are used to rank candidates for promotion. The performance evaluations and written tests are submitted to the ISP Merit Board, which then certifies those who are eligible for promotion to a higher rank. ISP can then fill vacancies from the list of those certified for promotion. The promotional lists are divided by zone, division, and other factors. The top ten officers on each promotional list are all equally certified for promotion with no numerical ranking. Officers outside the top ten may also be certified for promotion and are given a numerical rank.

In the 2015 promotional rankings, Reives was ranked 12th and was certified for promotion to sergeant. In 2016, Reives was ranked 26th and was again certified for promotion to sergeant.[2] In 2017, Reives ranked 27th and was not certified for promotion. Reives applied for promotion to sergeant in August 2016 based on the 2015 promotional rankings. At the time, Reives was paid the salary of a sergeant but he did not hold the "hard rank" of sergeant.

---

[2] ISP asserts that Reives was not certified for promotion in 2015 and 2016. However, the evidence cited by ISP in support of this contention clearly shows that Reives was certified for promotion. Dkt. ## 62-7, 62-8.

5

On October 11, 2016, Sergeant Griffin presented Reives with his evaluation. The evaluation rates an officer as "Needs Improvement," "Meets Expectations," "Exceeds Expectations," or "Not Applicable" across 13 categories. Sergeant Griffin rated Reives as "Meets Expectations" in six categories, "Exceeds Expectations" in six categories, and "Not Applicable" in one category. Sergeant Griffin then presented the evaluation to Lieutenant Doster. Sergeant Griffin and Lieutenant Doster discussed Reives ratings in certain categories. As a result, Sergeant Griffin changed four categories from "Meets Expectations" to "Not Applicable" and two categories from "Exceeds Expectations" to "Meets Expectations." Reives was presented with this changed evaluation on October 18, 2016.

ISP says the evaluation given to Reives on October 11 was a "draft." Reives asserts that it was the final evaluation and that Sergeant Griffin was forced to change the evaluation after meeting with Lieutenant Doster.

   c. **Proof Status**

ISP Directive PER-027 states that ISP "will not abuse its right to request a written medical certification from an officer's physician, but will request evidence of illness or injury if reasonable grounds exists to suspect abuse." Under the Directive, "Reasonable grounds for suspecting the existence of sick time abuse may include, but not be limited to: A pattern of sick time being used in connection with other 500 codes." "500 Codes" are ISP codes for time off, such as holiday time and personal time. If there is a belief

that the 500 codes are being misused, an officer's supervisor may require him or her to submit a report from the officer's treating doctor—i.e. "proof status."

Reives used 35 sick days between September 2015 and September 2016. 16 of those sick days were before or after a weekend or holiday. Reives was notified by Captain Spizzirri that reasonable grounds existed to suspect that sick time was being abused. Captain Spizziri therefore placed Reives on "proof status" and required Reives to provide a doctor's report when he used sick time.

Based on these facts, Reives alleges that ISP violated Tile VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by discriminating against him based on his race. ISP now moves for summary judgment on Reives' claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant

"must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor". *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Moreover, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (cleaned up). The Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

## DISCUSSION

We begin by determining the standard applicable to employment discrimination cases on a motion for summary judgment. ISP's arguments are based on the Supreme Court's burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but Reives argues that the Seventh Circuit has "move[d] away" from the "rigid methodologies" of *McDonnell Douglas*. Dkt. # 74, at 4. Reives is correct that the Seven

8

Circuit in *Ortiz v. Werner Enterprises, Inc.* instructed district courts to move away from separating evidence into "direct" and "indirect" evidence and treating those types of evidence differently. 834 F.3d 760, 765 (7th Cir. 2016). However, the Seventh Circuit noted in *Ortiz* that the "decision does not concern *McDonnell Douglas*" and that evaluating "direct" and "indirect" evidence together is "consistent with *McDonnell Douglas* and its successors." *Id.* at 766.

Indeed, the Seventh Circuit very recently reiterated that "*Ortiz* . . . did not alter the burden shifting framework created by *McDonnell Douglas*" and that the "well-known and oft-used standard remains an efficient way to organize, present, and assess evidence in discrimination cases." *Khungar v. Access Cmty Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (cleaned up).

"Under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Id.* (cleaned up). "If the plaintiff makes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (cleaned up). Using this framework, we evaluate whether the

evidence as a whole would permit a reasonable factfinder to conclude that Reives was discriminated against because of his race. *Id.*

ISP argues that it is entitled to summary judgment because he cannot establish a prima facie case of employment discrimination. Specifically, ISP argues that the downgrade in promotional rankings and placement on proof status are not adverse employment actions, Reives cannot prove that he was meeting ISP's legitimate expectations, and that he cannot prove that he was treated differently from a similarly situated employee outside his protected class. Additionally, ISP argues that even if Reives can make out a prima facie case, it had legitimate reasons for its actions. We address each argument in turn.

## I. Adverse Employment Actions

ISP first argues that the downgrade in promotional ratings and placement on proof status do not constitute adverse employment actions. Reives agrees that being placed on proof status is not an adverse employment action but argues that it was used against him to downgrade his promotional rankings. Reives is correct that the placement on proof status was considered as part of his October 2016 performance evaluation. However, we agree with ISP that the downgrade in promotional rankings is not an adverse employment action.

A materially adverse employment action is one where the plaintiff suffers "a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). The Seventh Circuit has grouped adverse employment actions into three

10

categories: "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in [their] work place environment" *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (cleaned up). A negative performance review, unaccompanied by a tangible job consequence, does not constitute an adverse employment action. *Grube v. Lau Industries, Inc.*, 257, F.3d 723, 729 (7th Cir. 2001); *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006).

Here, Reives says that the negative performance evaluation resulted in a downgrade in his promotional ranking and he was not promoted to sergeant. The October 2016 performance evaluation did result in a lower ranking, but Reives was still certified for promotion in the 2016 promotional rankings. Additionally, Reives applied for promotion in August 2016, which was based on the 2015 performance rankings. Reives was also already being paid the same salary as a sergeant even though he did not hold the "hard rank" of sergeant. Thus, Reives has not presented sufficient evidence to allow a reasonable trier of fact to conclude that the changes in the performance review had a tangible job consequence. Therefore, Reives has not shown an adverse employment action with respect to the performance review.

**II.     Employer's Legitimate Expectations**

ISP next argues that Reives was not meeting ISP's legitimate work expectations. Courts look at an employee's performance "through the eyes of [his] supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). "An employee who violates his employer's established policies fails to perform adequately or meet his employer's legitimate expectations." *Hall v. Vill. of Flossmoor Police Dep't*, 2012 WL 6021659, at *5 (N.D. Ill. 2012), *aff'd* 520 F. App'x 468 (7th Cir. 2013); *see also Anders v. Waste Mgmt of Wisconsin*, 463 F.3d 670, 676 (7th Cir. 2006) ("It cannot be disputed that [the plaintiff's] behavior on November 12 failed to meet Waste Management's 'legitimate expectations' as established by its Code of Conduct and Workplace Violence policy.")

Here, Reives violated multiple ISP policies when he inaccurately reported his Super Bowl Detail timeline in his reports, the memorandum ordered by Sergeant Griffin, and during the resulting investigation. Thus, Reives was not meeting ISP's legitimate expectations.

Therefore, Reives fails to satisfy the second element of a prima facie case of employment discrimination. However, the Seventh Circuit has noted that "even imperfect employees who break rules may have a claim for employment discrimination if their employer disciplines troublemakers inconsistently." *Hall*, 520 F. App'x at 472. We now turn to the issue of whether Reives has shown that a similarly-situated employee outside his protected class was treated differently.

### III. Similarly Situated Employee

We agree with ISP that Reives and his partner are not similarly situated.

Discrimination may be inferred when an employer treats an employee in a protected class less favorably than it treats a similarly situated employee outside that class. *De Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). "The similarly situated analysis requires a flexible, common-sense inquiry that asks 'whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis.'" *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). "[T]he most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Id.* at 518. "The critical question is whether [the employees] have engaged in conduct of comparable seriousness." *De Lima Silva*, 917 F.3d at 559. "Conduct may be comparably serious if it violates the same rule or is of a similar nature." *Id.*

Reives argues that he and his partner engaged in the exact same conduct and are therefore similarly situated. The undisputed evidence, however, does not support this argument. Reives and his partner committed different violations of ISP rules and were each punished for their distinct violations.

Reives' partner was forthcoming during the investigation while Reives was not. Reives' partner admitted that he attended a wake while on duty and was punished for that. On the other hand, Reives was punished for misrepresenting the timing of his

13

inspections in his reports, memorandum, and throughout the investigation. Reives says that he gave the "approximate" times he visited each establishment, so his conduct is therefore similar to his partner's. For example, Reives indicated he arrived at his last location at approximately 4:00 p.m. The undisputed evidence, however, shows that he was at his last location at 2:12 p.m. and left the location by 2:38 p.m. No reasonable trier of fact could conclude that 4:00 p.m. is "approximately" the same as 2:12 p.m. Therefore, the two officers committed different violations of ISP rules, were punished for their distinct rule violations, and are not similarly situated.

At bottom, Reives has failed to establish a prima facie case of employment discrimination based on race. The evidence presented by Reives would not permit a reasonable fact finder to infer that Reives was discriminated against because of his race. Accordingly, ISP's motion for summary judgment is granted.

## CONCLUSION

For the reasons mentioned above, the Court grants ISP's motion for summary judgment. Judgement entered. Civil case terminated. It is so ordered.

Dated: 2/23/2021

_____
Charles P. Kocoras
United States District Judge